UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO.  3:07CV-P296-S

JOSEPH WAYNE ALLEN                                                    PLAINTIFF

v.

LOUISVILLE METRO DEPARTMENT OF CORRECTIONS *et al.*          DEFENDANTS

<u>MEMORANDUM OPINION</u>

Plaintiff, Joseph Wayne Allen, filed this civil rights action under 42 U.S.C. § 1983

(DN 1).  As Defendants, Plaintiff named the Louisville Metro Department of Corrections

("DOC"), its Director Tom Campbell, and Officer Jeremiah Furman.  Each Defendant is sued

in his individual and official capacities.  During his stay as a pretrial detainee at the DOC,

Plaintiff alleges that he suffered numerous constitutional violations at the hands of these

Defendants.[1]  Specifically, Plaintiff claims that Defendants' actions violated his Fifth, Sixth,

Eighth, and Fourteenth Amendment rights under the United States Constitution and his rights

under Sections One, Eleven, and Seventeen of the Kentucky Constitution.[2]  Plaintiff is seeking

compensatory and punitive damages as well as injunctive relief.

The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A.[3]  For the

reasons set forth below, the Court will dismiss all of Plaintiff's claims except his individual

capacity Fourteenth Amendment claim for money damages against Defendant Campbell for

---

[1]Since commencing this action, Plaintiff has filed a notice of change of address indicating
that he has been released from the DOC's custody (DNs 3 & 4).

[2]The Court will address the specifics of Plaintiff's claims in the analysis section of this
Memorandum Opinion.

[3]Pursuant to 28 U.S.C. § 1915A, "[t]he court shall review . . . a complaint in a civil action
in which a prisoner seeks redress from a governmental entity or officer or employee of a
governmental entity."  Thus, even though Plaintiff paid the $350.00 filing fee, the Court is still
required to screen his complaint before service on Defendants.  *Id.*

failure to protect him from a physical assault by a group of inmates on or about March 31, 2006, and his ensuing failure to provide Plaintiff with timely medical care to treat the injuries he sustained in the attack.

## I.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, --U.S.--, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1964-65.  Additionally, even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Id.*

# II.  ANALYSIS

**A.      Fifth Amendment Claims**

The Fifth Amendment of the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend. V.

Plaintiff fails to explain how the Fifth Amendment applies to his claims.  Based on the facts as alleged by Plaintiff, the Court does not find that Plaintiff has a cognizable Fifth Amendment claim against Defendants in this instance.  Specifically, the Court notes that to the extent Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment, it circumscribes only the actions of the federal government.  *See, e.g., Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977).  Here, the actions of municipal, not federal, officials are at issue, and the Court will dismiss the Fifth Amendment claims.

**B.      Sixth Amendment Claims**

The Sixth Amendment of the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. CONST. amend. VI.

Plaintiff does not explain how Defendants' alleged actions violated his Sixth

Amendment rights, and the Court has carefully reviewed Plaintiff's complaint and cannot find any allegations that would establish a violation of the Sixth Amendment.  Accordingly, the Court will dismiss Plaintiff's Sixth Amendment claims.

**C.      Eighth Amendment**

The Eighth Amendment of the United States Constitution provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend VIII.  The Eighth Amendment "was designed to protect those convicted of crimes."  *Ingraham v. Wright*, 430 U.S. 651, 664 (1977).  Because the injuries alleged by Plaintiff occurred while he was a pretrial detainee, his reliance on the Eighth Amendment is misplaced, and the Court will dismiss his Eighth Amendment claims.

**D.      Section 1 of the Kentucky Constitution**

Section 1 of the Kentucky Constitution provides:

All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned:

First: The right of enjoying and defending their lives and liberties.
Second: The right of worshipping Almighty God according to the dictates of their consciences.
Third: The right of seeking and pursuing their safety and happiness.
Fourth: The right of freely communicating their thoughts and opinions.
Fifth: The right of acquiring and protecting property.
Sixth: The right of assembling together in a peaceable manner for their common good, and of applying to those invested with the power of government for redress of grievances or other proper purposes, by petition, address or remonstrance.
Seventh: The right to bear arms in defense of themselves and of the State, subject to the power of the General Assembly to enact laws to prevent persons from carrying concealed weapons.

Ky. CONST. § 1.  However, this section of the Kentucky Constitution does not give way to a private cause of action.  *See Taylor v. Univ. Med. Ctr., Inc.*, No. 3:03CV-502-H, 2005 U.S. Dist. LEXIS 7269, at *8 (W.D. Ky. Apr. 26, 2005) ("There is no private cause of action under Section 1 of the Bill of Rights in the Kentucky Constitution."); *Welch v. Gill*, No.

5:03CV-73-R, 2006 U.S. Dist. LEXIS 14052, at *12 (W.D. Ky. Mar. 28, 2006) ("The Plaintiff may not bring a private cause of action against the Defendants under Section 1 of the Kentucky Constitution.") (citing *Baker v. Campbell County Bd. of Educ.*, 180 S.W.3d 479, 482-83 (Ky. App. 2005)).

### E.    Section 11 of the Kentucky Constitution

Section 11 of the Kentucky Constitution provides:

> In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor. He cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land; and in prosecutions by indictment or information, he shall have a speedy public trial by an impartial jury of the vicinage; but the General Assembly may provide by a general law for a change of venue in such prosecutions for both the defendant and the Commonwealth, the change to be made to the most convenient county in which a fair trial can be obtained.

Ky. Const. § 11.  This section of deals with the accused's rights at trial.  Plaintiff does not explain how Defendants' alleged actions violated this section, and the Court has carefully reviewed Plaintiff's complaint and cannot find any allegations that would establish a violation of Section 11 of the Kentucky Constitution.  Accordingly, the Court will dismiss this claim.

### F.    Section 17 of the Kentucky Constitution

Section 17 of the Kentucky Constitution provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishment inflicted."  Ky. CONST. § 17.  "This section is nearly identical in language to the Eighth Amendment of the United States Constitution, and it has been treated very similarly by Kentucky courts."  *Simms v. City of Harrodsburg*, No. 06-CV-104-JMH, 2007 U.S. Dist. LEXIS 70250, at *15 (E.D. Ky. Sept. 21, 2007) (citing *Workman v. Commonwealth*, 429 S.W.2d 374, 376 (Ky. 1968)).  As such, like the Eighth Amendment, it has been held only to apply to convicted prisoners, not pretrial detainees.

*Id.*  The Court will dismiss this claim.

**G.     Remaining Claims**

This leaves Plaintiff's 42 U.S.C. § 1983 claim for injunctive relief and damages against Defendants for violating his Fourteenth Amendment rights.  To state a claim under § 1983, a plaintiff must allege not only violations of rights secured by the Constitution and laws of the United States but must also show that the alleged deprivation was committed by a "person" acting under color of state law.  *West v. Atkins*, 487 U.S. 42 (1988).

**1.     Injunctive Relief Claims**

Since filing this action, Plaintiff has been transferred/released from the DOC's custody (DNs 3 & 4).  An inmate's § 1983 claim for injunctive relief regarding the conditions of his confinement becomes moot due to the inmate's release from confinement or transfer to another facility.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding inmate's request for injunctive relief moot as he was no longer confined to the institution where the alleged wrongdoing occurred).  Here, it is clear that Plaintiff would derive no benefit from granting the requested injunctive relief.  Accordingly, because Plaintiff's claims for injunctive relief have been mooted by his release, the Court will dismiss them.

**2.     The DOC**

The DOC is not a "person" subject to suit under § 1983 as municipal departments, such as jails, are not amendable to suit under § 1983.  *See Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983).  Thus, even accepting as true all well-pleaded allegations of the complaint, it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief under § 1983 against the DOC. Accordingly, Plaintiff's claims against the DOC will be dismissed for failure to state a claim.

3.      **Official Capacity Claims Against Defendants Campbell and Furman**

Plaintiff's official capacity claims against Defendants are actually against the

municipality, Louisville-Metro.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989);

*Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  "A plaintiff seeking to hold a

municipality liable under § 1983 [must] identify a municipal 'policy' or 'custom' that caused

the plaintiff's injury."  *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403

(1997).  "Locating a 'policy' ensures that a municipality is held liable only for those

deprivations resulting from the decisions of its duly constituted legislative body or of those

officials whose acts may fairly be said to be those of the municipality."  *Id.* at 403-04.

"Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an

appropriate decisionmaker may fairly subject a municipality to liability on the theory that the

relevant practice is so widespread as to have the force of law."  *Id.* at 404.  "Beyond having to

identify 'conduct properly attributable to the municipality itself,' [a plaintiff] must also

demonstrate that, through its deliberate conduct, the municipality was the moving force behind

the injury alleged."  *Cherrington v. Skeeter,* 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Bd. of

County Comm'rs of Bryan County*, 520 U.S. at 404) (internal quotation marks omitted).  For

the purpose of initial review, it suffices to allege, that an individual officer's conduct

conformed to official policy or custom.  *Leatherman v. Tarrant County Narcotics Unit*, 507

U.S. 163, 165 (1993).

Plaintiff has failed to allege the existence of a governmental policy or custom relative to

the nature of his complaints and claims, and nothing in the record demonstrates that the alleged

injuries to Plaintiff resulted from application of a municipal policy or custom.  As such, the

Court will dismiss his official capacity claims for failure to state a claim.

4.        **Individual Capacity Claims Against Defendant Furman**

Plaintiff's allegations against Defendant Furman are set forth on pages 5-J through 5-Q of Plaintiff's complaint.  These claims concern four different areas in which Plaintiff asserts that Defendant Furman's conduct violated his constitutional rights: 1) Defendant Furman often assumed a combative stance in front of Plaintiff and used provocative words and gestures to attempt to engage Plaintiff in a physical altercation; 2) Defendant Furman told other individuals about the nature of the charges pending against Plaintiff; 3) during searches of Plaintiff's cell Defendant Furman destroyed some of Plaintiff's property; and 4) Defendant Furman had Plaintiff placed in disciplinary segregation for insufficient cause.  Each is addressed below.

i.        **Non-physical harassment**

Although verbal abuse by prison officials is not condoned, the law is clear that even if the allegation of verbal abuse is true, verbal abuse by itself does not violate the Constitution. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1981); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.").  The Court is required to dismiss Plaintiff's allegations regarding Defendant Furman's non-physical harassment of Plaintiff for failure to state a claim upon which relief can be granted.

ii.        **Defendant Furman's remarks about Plaintiff's case**

Plaintiff claims that he overhead Defendant Furman discussing details about Plaintiff's case on his cell phone with an unknown individual and also that on another occasion that Defendant Furman remarked to a food service worker that "I would leave you here but this dorm is full of rapists and murderers."  While discussing an inmates case with others might

violate internal DOC policies and procedures,[4] it does not rise to a level of a constitutional violation.  Plaintiff is not a juvenile and has not alleged that his case was sealed or otherwise protected from public disclosure.  To the contrary, in other portions of his complaint, Plaintiff alleges that due to widespread media coverage and the high profile nature of his case, the charges against him were widely known.  The Court will dismiss this claim for failure to state a claim upon which relief can be granted.

### iii.    Destruction of Plaintiff's property

Plaintiff's claim falls within the purview of the Fourteenth Amendment's protection, which provides that the state may not deprive a person of his property without due process of law.  However, the Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), rev'd on other grounds by, *Daniels v. Williams*, 474 U.S. 327 (1986).  An inmate may, however, bring a due process claim without showing that the state possesses an adequate postdeprivation remedy where the state employee deprived the prisoner of property, pursuant to "an established state procedure."  *Id.* at 534.  In those circumstances, the Supreme Court opined that the state can provide a predeprivation hearing.  *Id.*  Yet, under this rationale merely because the individual employee himself may foresee the intentional deprivation, his foresight alone is simply insufficient to hold the state itself liable.  Rather, "[t]he controlling inquiry is solely whether the state is in a position to provide for predeprivation process."  *Id.*  The Sixth Circuit has, thus, held that to prevail on a procedural

---

[4]Plaintiff has not even sufficiently alleged that the conduct violated the DOC's internal policies.  Rather, he has merely alleged that after he complained about the incident, Defendant Furman was instructed not to discuss Plaintiff's case with anyone in the future.

due process claim, a plaintiff must 1) demonstrate that he is deprived of property as a result of established state procedure that itself violates due process rights; or 2) prove that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss. *See Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). An inmate has the burden of pleading and proving that the state remedies for redressing the wrong are inadequate. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir.1983). Kentucky's statutory remedy for such losses has been deemed adequate. *Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

Here, Plaintiff failed to meet his burden. He does not allege that the deprivation occurred as a result of an established policy. While he claims that Defendant Furman intentionally deprived him of property without due process, he fails to show that he does not possess an adequate postdeprivation remedy to redress this wrong. Plaintiff has failed to state a cognizable claim under either theory of recovery. The Court will, therefore, dismiss his claims premised on the deprivation of his property.

### iv.   Disciplinary segregation

Finally, Plaintiff alleges that after a verbal altercation, Defendant Furman wrongfully placed him in some type of disciplinary segregation described by Plaintiff as "west hold" without cause and without providing Plaintiff with a disciplinary write-up or hearing. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that a prisoner faced with a disciplinary charge is entitled to: 1) advance written notice of the charges against him, no less than 24 hours prior to the hearing; 2) a qualified right to call witnesses and present documentary evidence in his defense, at least when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and 3) a written statement by the fact finders as to the evidence relied upon

10

and the reasons for the disciplinary action taken.  *Id.*  However, before the procedural due process protections described by *Wolff* are required, a plaintiff must first demonstrate that he possessed a protected liberty interest and that he was deprived of that interest without due process of law.  *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).  In the context of prison disciplinary proceedings, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court clarified that the *Wolff* protections are required only where the disciplinary action to be taken by prison officials is one that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.  Generally, temporary punishment in disciplinary segregation does not pose an atypical or significant hardship under *Sandin.  See e.g., Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Thus, Plaintiff did not have a right to procedural due process prior to being placed in "west hold."  Moreover, he has failed to allege that while in segregation he was deprived of any necessities that would give rise to a claim under the Fourteenth Amendment.[5]  The Court will dismiss his claims against Defendant Furman based on his placement in "west hold."

### 5.     Individual Capacity Claims Against Defendant Campbell

Finally, the Court will address Plaintiff's individual capacity money damages claims against Defendant Campbell as described on pages 5-A through 5-J of Plaintiff's complaint.[6]

---

[5]The Court observes that during the relevant time period Plaintiff appears to have been a pretrial detainee.  The Eighth Amendment prohibits deliberate indifference to the needs of convicted prisoners.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees, like Plaintiff, have a right to be free from cruel and unusual punishment that is analogous to the Eighth Amendment rights of convicted prisoners.  *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).

[6]Plaintiff uses only the term "Defendant" in this portion of his complaint.  However, because the Court must construe the complaint in the light most favorable to Plaintiff on initial review, it will presume that Plaintiff's use of the term Defendant is a reference to Defendant Campbell.  However, this should in no way be interpreted as a conclusive, binding determination by the Court.  And, as for those claims that the Court is allowing to proceed past initial screening

### i.    Time-barred claims

Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275-280 (1985). Thus, in Kentucky § 1983 actions are limited by the one-year statute of limitations found in KRS 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 183. When the face of the complaint shows that an action is time-barred, the case may be dismissed summarily upon screening. *Jones v. Bock*, --U.S.--, 127 S. Ct. 910, 920-921, 166 L. Ed. 2d 798 (2007).

Plaintiff presumably placed his complaint in the prison mail system on May 31, 2007, the date he signed it. The Court has conducted an extensive and exhaustive review of Plaintiff's complaint and attachments and has determined that it is clear from the face of Plaintiff's complaint that his claims arising out of the following incidents are barred by the one-year statute of limitations because the complaint was filed more than a year after the alleged events took place:

1.    Defendants' failure to protect Plaintiff from an attack by inmate Johnson on April 26, 2005, as described on page 5-A of Plaintiff's complaint;

2.    Officer Logston's[7] failure to prevent inmate Anthony Thornton from throwing

---

for further development, Defendant Campbell is of course free to move for summary judgment on the ground that he was not personally involved in the incidents after submitting appropriate evidence of this fact.

[7]The Court also notes that Officer Logston is not a party to this lawsuit.

urine and feces on Plaintiff on December 6, 2005, as described on pages 5-B through 5-D of Plaintiff's complaint;[8] and

3.      Defendants' failure to prevent inmate Smith from throwing urine and feces on Plaintiff on December 25, 2005, and subsequent refusal to "document" the incident as described on pages 5-D through 5-F of Plaintiff's complaint.

Accordingly, these claims will be dismissed for failure to state a claim upon which relief can be granted.

### ii.      January 2006 through May 2007 food service

Plaintiff alleges that from approximately January 2006 to May 2007, he endured problems with food service.  He alleges that with the assistance and/or permission of various unnamed officers, "work aides were able to contaminate Plaintiff's food with human feces, bodily fluids, and other extraneous debris."  He also alleges that from January 2007 to May 2007, his food was covered with plastic wrap "yet not withstanding the plastic wrapped food, Plaintiff continue[d] to suffer cruel and unusual punishment by Plaintiff's food remaining contaminated, obvious finger print[s] through plastic wrap into food, food in such disarray it appear[ed] to have been turned upside down and shook, teeth marks in the food, and at least one burger had a bite taken out of it."

To state a claim for relief under § 1983, the plaintiff must allege how each defendant was personally involved in the acts about which the plaintiff complains.  *Rizzo v. Goode*, 423 U.S. 362, 375 (1976).  Supervisory responsibility alone fails to state a claim of relief under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Horn v. Madison County*

---

[8]The Court will discuss separately Plaintiff's allegation that Defendant refused to continually monitor Plaintiff for communicable diseases after his exposure to the feces and urine as it appears that Plaintiff may have made requests for such testing within the year preceding commencement of this action.  *See* Section II.G.5.iii.

*Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994). Plaintiff does not allege that Defendant Campbell was personally involved in contaminating Plaintiff's food. Rather, Plaintiff explicitly attributes the contamination to various unnamed officers and work aides. Accordingly, the Court will dismiss Plaintiff's claims against Defendant Campbell as related to the food service issues Plaintiff allegedly experienced between January 2006 and May 2007.

### iii. Refusal to test Plaintiff for communicable diseases

Plaintiff alleges that after inmates Thornton and Smith threw urine and feces on him, Defendant continually refused his requests to be tested and/or retested for various communicable diseases including "HIV, HCV, Ecoli, and Hepatitis." Plaintiff further alleges that Defendant's refusal to test and/or retest him for these diseases has caused Plaintiff to suffer extreme anxiety and mental anguish.

Under the Prison Litigation Reform Act, "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff has not alleged a physical injury in connection with this claim. Accordingly, his claim must be dismissed because it is predicated solely on an alleged mental or emotional injury.

### iv. Decision to move Plaintiff to the general population

On or about February 28, 2006, Plaintiff claims that Defendant informed him that he had been placed on the "move list" for housing in the general population. Plaintiff alleges that Defendant's decision caused him great anxiety and nervousness. Plaintiff also alleges that when Plaintiff refused to move, Defendant placed him in the "hole" without several of the amenities afforded other inmates causing him enen more mental anguish. Again, Plaintiff has not alleged a physical injury in association with these claims subjecting them to dismissal under 42 U.S.C. § 1997e(e). Additionally, as already discussed, temporary placement in disciplinary

14

segregation in and of itself does not give rise to a claim because it does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

**v.**  **March 31, 2006, assault**

Plaintiff alleges that he requested numerous times to be taken out of the general population and placed back into protective custody due to the "the nature of charges against Plaintiff and the high profile given Plaintiff by the local print and electronic media, yet Defendant refused to adhere to Plaintiff's concerns and requests." As a result, Plaintiff claims that on March 31, 2006, "Plaintiff suffered a violent attack by a 'gang' of young black men numbering more than ten, resulting in physical injuries sustained by Plaintiff, including, but not limited to the loss of a molar tooth and a front [tooth] broken in half and lost and two broken ribs and multiple lacerations and bruises about the head and shoulders, upper torso, and legs." Plaintiff also alleges that he was not provided with medical treatment for 60 days after the attack despite requesting it, leaving him in "severe pain and agony."

As a general principle, a prison official has the duty to ensure the "reasonable safety" of inmates. *See Farmer v. Brennan*, 511 U.S. 825 (1994). A prison official is liable for failing to protect an inmate from assaults by other inmates when a plaintiff proves the following: "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

To be certain, "prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another." *Farmer*, 511 U.S. at 858 (Thomas, J. concurring). As a result, some level of violence can be unavoidable no matter what precautions are taken, and officers cannot be expected to prevent every assault before it occurs

15

or to stop an assault in progress before injuries are inflicted. *Id.* However, in this case, Plaintiff has alleged that Defendant knew that Plaintiff faced a great risk of harm if placed in the general population due to the nature of the charges against him, yet failed to place Plaintiff in protective custody.

Additionally, the Sixth Circuit has held that:

> Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise. This violation is not premised upon the "detrimental effect" of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity.

*Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004).

Based on the facts alleged, the Court will allow this claim to proceed past initial screening for further development as against Defendant Campbell.[9]

### vi.      Failure to investigate or file criminal charges against attackers

Plaintiff alleges that on or about May 6, 2006, he demanded that Defendant investigate the attack further and file charges against the perpetrators, but Defendant refused. However, "[i]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619

---

[9]The Court is aware that the alleged assault occurred on March 31, 2006, a little over thirteen months before Plaintiff filed the instant action, raising the issue of whether the claim is barred by the one-year statute of limitations. However, a timely filed grievance tolls the running of the statute of limitations. *See Stout v. Rees*, No. 3:06CV-P277-H, 2006 U.S. Dist. LEXIS 53210 (W.D. Ky. July 28, 2006). Under the DOC's grievance procedures, "the total time allowable from the initial to the l ast level of review is not to exceed 60 days." DOC Inmate Grievance Procedure 11.14(H)(1)(b). Thus, unlike the claims dismissed above on statute of limitations grounds (which all occurred in 2005), it is possible that this claim could have still been in the grievance process in the year preceding Plaintiff's commencement of this action. Thus, the Court cannot say that it is clear from the face of the complaint that this claim is time barred. Accordingly, it would be improper for the Court to dismiss it on initial review. *See Jones*, 127 S. Ct. at 920-21.

(1973). "The failure to conduct a full and fair investigation and prosecution of an alleged crime does not state a claim unless there is a violation of another recognized constitutional right." *Smallwood v. McDonald*, 805 F.2d 1036 (6th Cir. 1986) (citing *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam)); *Nelson v. Detroit Police Dep't*, 798 F.2d 470 (6th Cir. 1986). As further explained by the Sixth Circuit:

> It is true that law enforcement officials can be liable for their inaction when they fail to perform a statutorily imposed duty to enforce the law equally and fairly. *Smith v. Ross*, 482 F.2d 33, 36 (6th Cir. 1973). However, a failure to adequately investigate an incident does not state a claim unless the defendants violate a specific constitutional right of the plaintiff. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Here [the plaintiff] merely requested an investigation by the FBI, and he alleges that the response was inadequate. On these facts, the district court was correct to conclude that he had failed to state a claim.

*Buerger v. Smith*, 779 F.2d 49 (6th Cir. 1985).

Here too, Plaintiff's complaint is simply that Defendant did not properly investigate and prosecute his alleged attackers. As such, Plaintiff does not state any cognizable constitutional violation and the Court must dismiss this claim for failure to state a claim upon which relief can be granted. *See Marks v. City of Warren*, No. 98-74903, 1999 U.S. Dist. LEXIS 17990 (E.D. Mich. Oct. 29, 1999) ("The Plaintiff does not have a life, liberty, or property interest in having the Warren Police Department write down her complaint against another citizen.").

### vii.   Plaintiff's request for counseling after another inmate's suicide

Plaintiff alleges that on or about June 13, 2006, inmate William Whentworth committed suicide in the cell next to Plaintiff's cell in his plain view. Plaintiff claims that the incident caused him to see visions of Whentworth and have nightmares about the incident, yet Defendant failed to provide him with any psychological counseling. To sustain a cause of action for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 104.

"Medical needs encompass treatment for mental illness." *Davis v. Oakland County*, No. 96-1678, 1998 U.S. App. LEXIS 7172 (6th Cir. Apr. 7, 1998).  However, an inmate must still allege that his mental health problems constitute a serious medical need. *Id.*  Plaintiff has failed to sufficiently allege that his mental stress was sufficiently serious to require counseling and treatment. *See e.g., Snider v. Hughes*, No. 95-6052, 1995 U.S. App. LEXIS 15846 (4th Cir. Jun. 27, 1995).  Accordingly, this claim will be dismissed.

### III.  CONCLUSION

In conclusion, the Court is dismissing all of Plaintiff's claims for failure to state a claim upon which relief can be granted, except his Fourteenth Amendment individual capacity claim for money damages against Defendant Campbell for failure to protect him from a physical assault by a group of inmates on or about March 31, 2006, and the ensuing failure to provide Plaintiff with timely medical care for the injuries he sustained in the attack.

The Court will enter Orders consistent with this Memorandum Opinion.

Date:

cc:     Plaintiff, *pro se*, 5510 Eelgrass Court, Apt 5, Louisville, KY 40258
        Plaintiff, *pro se*, 51 W. Main St. Tavares, FL 32278
        Defendants
        Jefferson County Attorney
4411.008